**FILED**

UNITED STATES DISTRICT COURT

DISTRICT OF COLUMBIA

MAY 2 1 2007

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

| | |
|---|---|
| FRANK ADAMS (Pro Se) <br><br> 5817 South Marwood Blvd. <br><br> Upper Marlboro, Md. 20772 <br><br> H- 301-599-6882, W- 202-369-9256 <br><br> Plaintiff, <br><br> vs. <br><br> THE UNITED STATES CAPITOL POLICE <br><br> BOARD  119 D. St. NE, <br><br> Washington, DC 20510 <br><br> Defendant | Case: 1:07-cv-00936 <br> Assigned To : Sullivan, Emmet G. <br> Assign. Date : 5/21/2007 <br> Description: Employ. Discrim. <br><br> JURY ACTION |

**COMPLAINT**

1. I, Frank Adams, hereby file this civil action against the United States Capitol Police Board, the employing office for the United States Capitol Police Department, pursuant to the Congressional Accountability Act, 2 U.S.C. 1301, 1302 et seq., incorporating Title VII of the Civil Rights Act, 42 U.S.C. 2000e et seq. Plaintiff seeks relief for harms caused to him by Defendant's unlawful discrimination and hostile working environment based on race (Afro-American) and age (54) and for its wrongful classification of Plaintiff, a Lieutenant, as an

1

exempted employee in violation of the Federal Labor Standards Act.

**JURISDICTION AND VENUE**

2. This Court has jurisdiction over this Complaint because questions of Federal Law are presented, 28 U.S.C. 1331. Specifically, this court has jurisdiction of this case under the Congressional Accountability Act, 2 U.S.C. 1408. All the acts complained of took place within the District of Columbia during the course of the Plaintiff's employment.

3. This Court is the proper venue pursuant to 28 U.S.C. 1391. Defendant, the United States Capitol Police Board, is located in the District of Columbia, where is operates and has jurisdiction.

**EXHAUSTION OF ADMINISTRATIVE REMEDIES**

4. Plaintiff exhausted administrative remedies by completing counseling and mediation with the Office of Compliance as required. Pursuant to 2 U.S.C. 1402, 1403, and 1404 (2), Plaintiff's counseling period began on December 13, 2006 (OOC case no. 07-CP-17) and ended on January 12, 2007. Plaintiff's Mediation period began on January 23, 2007 and ended February 22, 2007.

**Parties**

5. Plaintiff is an African American employed by Defendant, the United States Capitol Police Board. Plaintiff is a class agent or member of the proposed class in Black-Malloy, et al. v. United States Capitol Police Board, Civil Action NO. 01-2221 (EGS) which alleges systematic employment discrimination by the Defendant against African American officers.  He is also a pro se litigant in Frank Adams v. United States Capitol Police Board 04-00943 EGS, 05-00491 EGS, and 06-00653 EGS (consolidated into Blackmon-Malloy). This case is related to the Blackmon-Malloy civil action, however because of unrelated allegations such as violations of the Federal Labor Standards Act (FSLA) and allegations of age discrimination, this case should not be consolidated at this time.

Defendant is the Capitol Police Board, 119 D. Street, N.E., Washington, DC 20510.  Defendant is the Plaintiff's employer and is being sued because it continues to subject Plaintiff to a hostile, discriminatory environment. Additionally, Defendant continues to retaliate against Plaintiff for his objection to the discrimination and hostilities and for his participation as a Plaintiff in a proposed class action complaint and other civil actions against Defendant.

## Allegations

6. Defendant denied Plaintiff promotional opportunities because of Plaintiff's age. Plaintiff became aware that several white Capitol Police officials filed requests for counseling and mediation with the Congressional Office of Compliance alleging age discrimination. Plaintiff became aware that the U.S. Capitol Police Board approved substantial settlements for those officials as a remedy. Each, if not all of those officials is younger than Plaintiff. Through further investigation, interrogatories, depositions and discovery, Plaintiff will be able to prove that he was also discriminated against by the Defendant because of his age.

7. Defendant denied Plaintiff fair overtime compensation due to the wrongful classification of Plaintiff's rank as an exempted employee under the Fair Labor Standards Act(FLSA). Section 13(a)(1) of the Fair Labor Standards Act, as amended, and as applied to Section 203 of the Congressional Accountability Act of 1995, 2 U.S.C. 1313, provides an exemption from the Act's minimum wage and overtime requirements for certain employees. However, Section 541.3(b) states that "the section 13(a)(1) exemptions and regulations in this part do not apply to police officers, detectives, deputy sheriffs, state

troopers, highway patrol officers, investigators, inspectors, correctional officers, parole officers, park rangers, firefighters, paramedics, emergency medical technicians, ambulance personnel, rescue workers, hazardous material workers and similar employees, regardless of rank or pay level, who perform work such as preventing, controlling or extinguishing fires of any type; rescuing fire, crime or accident victims; preventing or detecting crimes; conducting investigations or inspections for violations of law; performing surveillance; pursuing, restraining and apprehending suspects; detaining or interviewing witnesses; interrogating and finger printing suspects; preparing investigative reports; or other similar work." Since Lieutenants employed by the U.S. Capitol Police Department are police officers who perform many of these duties, they should not be classified as an exempted employee under the Fair Labor Standards Act (FLSA). Additionally, the Department does not view, recognize or treat Plaintiff as a manager as evidenced by Defendant's refusal to allow Plaintiff, a Lieutenant, access to educational opportunities presently available to its real managers, Captains and above (see exhibit A).

Plaintiff, along with the Privates under his command, was ordered to attend dispatcher training, equipment trouble shooting training, and Computer Aided Dispatching

training. Plaintiff, along with the Sergeants under his command, was ordered to sit and monitor security control and alarm equipment. The training that Plaintiff received as well as certain assignments given to him are not things associated with "managers or management". Therefore, Plaintiff should receive the same overtime compensation (time and a half) and special pay benefits as Sergeants and Privates and should not be classified as an exempted employee.

 8. Defendant continues to subject Plaintiff, as well as other Afro-American employees, to hostile working conditions by refusing to properly investigate a letter which was written anonymously and widely distributed to Department personnel and members of Congress(Exhibit B). The letter alleged serious mis-conduct by Department personnel and employees who work for the U.S. Capitol Police board. A thorough investigation would have cleared the names of those individuals named in the letter(two of whom are the highest ranking Afro-American officers on the Department). A proper investigation would have provided the means for disciplining those individuals found to have committed the alleged violations. If the allegations were found to be false, a proper investigation would have possibly identified the anonymous source for appropriate disciplinary action.

9. The Defendant continues to retaliate against Plaintiff for his objections to discriminatory and hostile working conditions and for his participation as a Plaintiff in Blackmon-Malloy, et al. v. United States Capitol Police Board, Civil Action NO. 01-2221 (EGS) and Frank Adams v. United States Capitol Police Board 04-00943 EGS, 05-00491 EGS, 06-00653 EGS. Defendant previously filed civil actions against the Capitol Police Board alleging discrimination for denying him the opportunity to participate in the John Hopkins Graduate Public Safety Executive Leadership Program (PELP).

The Department retaliated by changing the eligibility requirements making it impossible for Plaintiff to ever participate in this program again (Exhibit B). A program which had been previously made available to Lieutenants, is now only available to Captains and above. Additionally, those individuals who have a Masters degree are no longer eligible. Defendant fixed it so that even if Plaintiff was promoted to Captain, he would still not be eligible for the John Hopkins program because Plaintiff has a Masters Degree (unrelated to Public Safety Executive Leadership).

10. The Department wrote the requirements for yet another leadership program at John Hopkins so that Plaintiff would not be eligible (John Hopkins Public Safety Aspiring Leaders Program (PALP)(Exhibit C). This is a two

year program available only to officers below the rank of Lieutenant. When completed the individual is automatically accepted and continues into the Graduate Program (PELP). The Department fixed it so that it is possible for officers in ranks above and below the Plaintiff's rank of Lieutenant are eligible for the PELP and PALP leadership training at John Hopkins. The Defendant's discrimination against Plaintiff is not subtle at all.

   11. Plaintiff hereby demands Trial by Jury.

### PRAYER FOR RELIEF

   12. Wherefore, the Plaintiff respectfully requests an injunction enjoining Defendant from discriminating and retaliating against Plaintiff, with appropriate notices of the injunction posted at the Defendant's work place. Additionally, Plaintiff requests that this Court order the United States Capitol Police Board and the United States Capitol Police to:

   13. Provide Plaintiff with funds and administrative time to pursue advanced educational opportunities at an institution and program of his choice.

   14. Promote Plaintiff to the rank of Inspector.

   15. Award compensatory damages in the maximum monetary amount allowable by law, and all Plaintiff costs, including reasonable attorney's fees and expert witness fees.

16. Award full back pay for promotional opportunities denied as well as overtime compensation not paid at the appropriate rate and specialty pay.

17. Disciplinary actions against the discriminating Officials.

18. Provide such other relief as this Court deems just and proper.

Dated this 21st day of May 2007

FRANK ADAMS - PRO SE

| | | | |
|---|---|---|---|
| SUBJECT: | Johns Hopkins Graduate Public Safety Executive Leadership Program (PELP) | NOTICE No: | 06.32 |
| | | ISSUED: | 05 Jul 06 |
| REMARKS: | POST ON ALL SECTION AND DIVISION BULLETIN BOARDS AND ANNOUNCE AT ROLL CALL | POST UNTIL: | 21 Jul 06 |

The Department is happy to announce our continuing involvement with Johns Hopkins University's Graduate Public Safety Executive Leadership Program (PELP). This external training opportunity is available to sworn employees in the rank of captain or above who have not obtained a master's degree prior to enrollment in PELP or who have not received a federally funded academic credential (*this does not include participation in the USCP Student Loan Repayment Program or Tuition Reimbursement Program*).

The 13th session of the Graduate Public Safety Leadership Program begins on September 8, 2006. PELP is one of the nation's most comprehensive interdisciplinary programs designed specifically for current and future leaders in the field of public safety. The program has a rigorous curriculum built on the themes of quality leadership, values, ethics and integrity, managing differences, and interagency cooperation and collaboration. The program provides opportunities to interact with recognized experts in each of these areas and is designed to develop new—and enhance existing—leadership, management, human resource, and problem-solving skills. Successful participants will be awarded a *Master of Science degree in Management* from Johns Hopkins University.

Johns Hopkins requires that each applicant to the Graduate Public Safety Executive Leadership Program:

1. Hold a supervisory position within his/her public safety agency.

2. Have a written endorsement from his/her Chief of Police.

3. Possess a bachelor's degree or its equivalent from an accredited college or university with a successful academic record.

**To be considered by the Department for this educational opportunity, each candidate must do the following:**

1. Submit a résumé with a cover page to Deputy Chief Vickie L. Frye, Commander of the Training Services Bureau.

2. On a separate sheet of paper, respond to the statements below in a typed, cohesive essay that is double-spaced, in 12-point font, and no more than three pages long:

    a. Describe your current and projected role as a leader in the United States Capitol Police.

    b. Provide specific examples of your excellence in leadership.

    c. Discuss the goals you wish to achieve through PELP.

    d. Describe how your participation in PELP will benefit the Department.

3. Be willing to commit to a three-year service agreement period with the United States Capitol Police after receiving your degree.

All candidate applications need to be received by the Training Services Bureau on July 21, 2006, no later than 1500 hours.

07 0936

**FILED**

MAY 2 1 2007

NANCY MAYER WHITTINGTON, CLE
U.S. DISTRICT COURT

Upon the closing of this announcement, the Training Services Bureau will assemble an Academic Review Board (ARB) to review the applications. The ARB members will individually score each candidate by rank, seniority within the Department, résumé, and overall quality and originality of the submitted essay. The ARB members will then convene for a panel discussion to consider general information about each candidate before making a recommendation to the Chief of Police.

General candidate information reviewed during the panel discussion includes, but is not limited to, the following:

- Essay and résumé
- Duty status
- Contributions to the Department
- Training record
- Disciplinary record

The Chief of Police will make a final candidate selection after considering the ARB's recommendation. All applicants will be notified of their eligibility at the conclusion of the selection process.

If selected, Johns Hopkins will require official transcripts from all colleges and universities you have attended. If you would like further information, contact the Training Services Bureau at 301-877-8200.

Christopher M. McGaffin
Acting Chief of Police

*Exhibit B*

March 15, 2006

The Honorable John A. Boehner
1011 Longworth HOB
Washington, DC 20515-3508

Dear Congressman Boehner,

The United States Congress has been the focus of improprieties involving both parties and Houses of Congress over the last few years. With this in mind, the Congress should investigate and establish oversight for the United States Capitol Police, sworn to protect them. Being a former employee of the Capitol Police, I have remained silent for years, but recent events have caused me to send you this letter. The Capitol Police for many years has demonstrated countless examples of double standards, inappropriate conduct, favoritism, and reverse discrimination from the police management to the Sergeant at Arms.

The recent political action against Chief Terrance W. Gainer was conspired by Wilson Livingood (House Sergeant at Arms), Ms. Liz Dawson (Staff, Subcommittee on Legislative Appropriations), Ms. Jan Jones (Director, U. S. Capitol Police, Human Resources), former Assistant Chief Robert L. Howell (Sergeant at Arms Office), Mr. John Caulfield (U.S. Capitol Police, General Council) and Don Kellaher (House Sergeant at Arms Police Liaison). Chief Gainer was in the process of terminating Ms. Jan Jones, because the Office of Human Resources is a total disaster due to her incompetence. Ms. Jones along with the personnel listed above decided to find a discrepancy to remove the Chief of Police. Mr. John Caulfield was assigned as the head of the expedition. Mr. Caulfield found an old law about nepotism from 1967, which he then leaked to the press without Congressional approval. Former Chief Powell had two nephews that worked for the police department, Chief Kerrigan had a brother on the police department, and Chief Varey's daughter is still employed by the police department. Based on this information, how can anyone point a finger at Chief Gainer? You mean to tell me, the entire group of personnel listed above, with all their years of knowledge and experience, just now found out about this nepotism law, how convenient.

On a more serious note, the inappropriate conduct continues to thrive at a growing rate, and the upper management takes no action. In the recent past, when Acting Chief ▆▆▆▆▆▆▆▆▆▆▆ was the Deputy Chief of the Protective Service Bureau, he was caught receiving oral sex in his office from a female Sergeant working directly under him. A cleaning contractor, when entering the Deputy Chief's office to clean the carpet witnessed this sexual act. The contractor told everyone in Headquarters about the event in the Deputy Chief's Office. The Acting Chief also shared a room with the same female

*07 0936*

**FILED**

MAY 2 1 2007

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

-2-

Sergeant during the Republican National Convention in New York City last year. Is this who the Congress wants heading their Police Department? This is just one example of unacceptable conduct, and the Sergeant at Arms had knowledge of this situation and took no action. Please review the enclosure for other examples of inappropriate conduct including extra-marital affairs within the same command.

Another example of the system failing is the promotion of Larry D. Thompson to Acting Assistant Chief of Police. Several years ago, Acting Assistant Chief Thompson could not attend the FBI National Academy because of his past high drug use before joining the police department. To make matters worse, Acting Assistant Chief Thompson lied on his employment application stating he had never used illegal drugs. Do we want this person as the number two, running the police department?

These are just two examples of the growing improprieties, and the enclosure lists other examples.

The United States Congress needs to revamp and overhaul the United States Capitol Police and the Capitol Police Board by making up a bipartisan Police Board consisting of Congressman and Senators to ensure fair and consistent actions are being taken to restore confidence in management. The Police Department's morale is at an all time low, and Congress needs to restore the luster and dignity to the police department. The rank and file have nowhere to turn, but to the Members of Congress, as the confidence in the current management sinks deeper every day. Every Member of Congress should take a few minutes and have an honest conversation with the officers working in the field to understand the severity of the police department's condition.

Please develop some oversight and controls for the Capitol Police before the situation ends up on the front page of the Washington Post. I hope you do what's right, and support change to bring back confidence in the management.

*Voice of the Rank and File*

CC: US Congress

-3-

## ENCLOSURE

1. The police department's Chief General Counsel, John Caulfield, has been arrested in Virginia for drunk in public and using inappropriate racial slurs, and this person representing the police department.

2. In 2005, while on an Official Protective assignment at Greenbrier Resort, employees of the police department, including supervisors and the employees of the House Sergeant at Arms Office, went to a "strip club" in official police vehicles.

3. Former Assistant Chief Howell, who now works for the House Sergeant at Arms, covered up a gun violation when his girlfriend's daughter brought an unregistered firearm through the south barricade of the Capitol. However, when a staff member employed by Senator Lott was returning from a hunting outing with an unloaded and cased shotgun, the staff member was arrested and charged with a felony.

4. Ms. Jan Jones, the Director of Human Resources does not have any type of college degree or accreditation, and what makes her qualified to manage Human Resources for a premier federal law enforcement agency.

5. A few years ago the House Sergeant at Arm's stepson killed himself with a police issued firearm, and no actions, investigation or charges were filed against the House Sergeant at Arms.

6. Several years ago, Acting Chief McGaffin's brother in-law killed himself with a police issued firearm, and no actions, investigation or charges were filed against Acting Chief McGaffin.

7. Former Assistant Chief Howell retired from the police department and gets a job with the House Sergeant at Arms office the next day.

8. Former Deputy Chief Bahrns retired and gets a job with the Architect of the Capitol.

9. Inspector Fredinal Rogers had an affair with ███████████ while under his command of a specialized unit. This was common knowledge and a violation of police department policy, and no actions were taken.

10. Captain Pickett provided a class for profit for officers taking the sergeant's exam, while dating a woman working for the company preparing the exam. Eight of the top ten people on the sergeants list took his paid class. The investigation was swept under the rug.



# UNITED STATES CAPITOL POLICE

## BULLETIN BOARD NOTICE

Exhibit C

| SUBJECT: | Johns Hopkins Public Safety Aspiring Leaders Program (PALP) | NOTICE No: | 06.56 |
|---|---|---|---|
| | | ISSUED: | 2 Nov 2006 |
| REMARKS: | POST ON ALL SECTION AND DIVISION BULLETIN BOARDS AND ANNOUNCE AT ROLL CALL | POST UNTIL: | 17 Nov 2006 |

The Department is happy to announce our involvement with the Johns Hopkins Public Safety Aspiring Leaders Program (PALP), which is a unique two-year program designed to prepare future leaders to successfully meet the challenges facing communities, police agencies, and the public safety profession. This undergraduate program is designed for successful front line officers who have not yet attained supervisory or command rank.

This educational opportunity is open to sworn employees in the rank of Private First Class, Technician, or Detective/MPO who have not obtained a bachelor's degree prior to enrollment in PALP. Classes begin in January 2007 and enrollment is limited. All officers who have attained an Associate's degree (or equivalent - 60 credits) from an accredited college or university may apply.

Those accepted into the program will complete a two-year course of study leading to a Bachelor of Science in Management. Participants who successfully complete the two-year Undergraduate Program are eligible for the one-year Accelerated Graduate Program. Those who complete the Accelerated Graduate Program are awarded the Master of Science degree in Management from the Johns Hopkins University. This highly regarded program allows participants to complete their bachelors and graduate degrees through a seamless course of study in less than three years.

The program has a rigorous curriculum built on the themes of quality leadership, values, ethics and integrity; managing differences; and interagency cooperation and collaboration. The program provides opportunities to interact with recognized experts in each of these areas, and is designed to develop new and enhance existing leadership, management, human resource and problem solving skills.

**To be considered by the Department for this educational opportunity, each candidate must do the following:**

1. Submit a resume with a cover page to Deputy Chief Vickie L. Frye, Commander of the Training Services Bureau.

2. On a separate sheet of paper, respond to the statements below in a typed, cohesive essay that is double spaced, in 12-point font, and no more than 3 double-spaced pages:

    - Describe your current responsibilities and projected role as a leader in the United States Capitol Police.

    - Discuss the goals you wish to achieve through the Public Safety Aspiring Leaders Program.

    - Describe how your participation in the Public Safety Aspiring Leaders Program will benefit the organization.

3. Be willing to commit to a three-year service agreement period with the United States Capitol Police after receiving your degree.

**Applicants should send the resume and essay no later than the COB Friday, November 17, 2006.**

Upon the closing of this announcement, the Training Services Bureau will assemble an Academic Review Board (ARB) to review the applications. ARB members will individually score each candidate by seniority with the Department, resume, and overall quality and originality of submitted essay. ARB members may then convene for a panel discussion to consider general information about each candidate before making a recommendation to the Chief of Police.

General information reviewed during the panel discussion will include, but is not limited to, the following:
- essay and resume;
- duty status;
- contributions to the Department;
- training record; and
- disciplinary record.

The Chief of Police will make a final candidate selection after considering the ARB's recommendation. All applicants will be notified of their eligibility at the conclusion of the selection process.

If selected, the Johns Hopkins University will require official transcripts from all colleges and universities you have attended. If you would like further information, please contact the Training Services Bureau at (301) 877-8200.

Phillip D. Morse, Sr.
Chief of Police



*advancing safety, h[...]l and workplace rights in the legislative branch*

*Office of Compliance*                                                         Office of the Executive Director

February 23, 2007

**CERTIFIED MAIL**
**RETURN RECEIPT REQUESTED**
Frank Adams
5817 South Marwood Boulevard
Upper Marlboro, MD 20772

**END OF MEDIATION NOTICE**
Re: Frank Adams, Employee
and
Office of the U.S. Capitol Police Board, Employing Office
Case No. **07-CP-17 (AG, CV, RP, FL)**

Dear Mr. Adams:

This is to notify you that the mediation period has ended in the above matter without a resolution of your claims. The counseling period began on December 13, 2006 and ended on January 12, 2007. The mediation period began on January 23, 2007 and ended on February 22, 2007.

Your request for mediation was based upon your allegation(s) that the employing office violated sections 201, 203 and 207 of the Congressional Accountability Act ("CAA").

If you wish to proceed further with this matter, you must do so **not later than 90 days, but no sooner than 30 days**, after you receive this end of mediation notice. During that 60-day time frame you may either: (1) file a **formal complaint** with the Office of Compliance in accordance with section 405 of the (CAA); or (2) file a **civil action**, in accordance with section 408 of the CAA, in the United States District Court for the district which you are employed, or in the U.S. District Court for the District of Columbia. You may assert only those claims that you made during counseling and mediation.

If you choose to file a formal complaint with the Office of Compliance it must be legibly written or typed on the enclosed *Complaint* form. The complaint must be signed by you or your designated representative and contain the following information:

(a)   the complainant's name, mailing address, and telephone number;

(b)   the involved employing office's name, address, and telephone number;

(c)   the name(s) and title(s) of the individual(s) involved in the conduct that you claim violated the CAA;

Room LA 200, Adams Building • 110 Second Street, SE • Washington, D.C. 20540-1999 • t/202.724.9250 • f/202.426.1913 • tdd/202.426.1912

www.compliance.gov

(d)   a description of the conduct that you challenge, including the date(s) and location(s) of the conduct;

(e)   a brief description of why you believe the challenged conduct violated the CAA and your identification of each applicable section of the Act (i.e., Sec. 201 (Employment discrimination), Sec. 202 (Family and Medical Leave), Sect. 203 (Fair Labor Standards), Sec. 204 (Employee Polygraph Protection), Sec. 205 (Worker Adjustment and Retraining), Sec. 206 (Employment and Reemployment of Veterans), and Sec. 207 (Intimidation or Reprisal).

(f)   a statement of the relief or remedy sought ;

(g)   the name, address, and telephone number of the representative, if any, who will act on your behalf.

If you choose to file a formal complaint with this Office, we will serve a copy of your complaint, and the Office's Procedural Rules, on the named employing office, or its designated representative. The Office's transmittal letter will notify the employing office that it must file an answer to the complaint with this Office within 15 days after service of the complaint. A copy of the service list containing the names and addresses of the parties and their designated representatives will also be forwarded to the employing office.

If you file a formal complaint with this Office, we will appoint an independent Hearing Officer to consider the complaint and render a decision. The Office of Compliance will issue a notice of hearing fixing the date, time and place of the hearing. Absent a postponement granted by this Office, or other dispositive action by the Hearing Officer, the hearing will commence no later than 60 days after the filing of the complaint.

If you choose to file a civil action in U.S. District Court, the Office will not process your case in court and it will be your responsibility to abide by all applicable Federal Rules and procedures applicable to civil actions.

We have enclosed the *Participant Survey Form*, an instrument designed to provide the Office of Compliance with important feedback on participants' experience in the mediation program. If you have not already done so, please complete the survey and return it to the Office by facsimile at (202) 426-1913 or mail it to the Office of Compliance, Adams Building, Room LA 200, 110 Second Street, S.E., Washington, D.C. 20540-1999.

If you have any questions or need any assistance, please contact this Office.

Sincerely,

Teresa M. James
Director of Dispute Resolution

Enclosures:   Facsimile Notice
              Complaint Form
              Participant Survey Form
cc:   Frederick Herrera, Esq. (with Participant Survey Form)
      Marvin Johnson, Mediator

# CIVIL COVER SHEET

JS-44
(Rev.1/05 DC)

## I (a) PLAINTIFFS

Frank Adams

## DEFENDANTS

United States Capitol Police Board

(b) COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF _____
(EXCEPT IN U.S. PLAINTIFF CASES)

COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT _____
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED

(c) ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER)

Frank Adams (Pro Se)
5817 South Marwood Blvd
Upper Marlboro, Md. 20772

ATTORNEYS (IF KNOWN)

Case: 1:07-cv-00936
Assigned To : Sullivan, Emmet G.
Assign. Date : 5/21/2007
Description: Employ. Discrim.

*JURY ACTION*

## II. BASIS OF JURISDICTION
(PLACE AN x IN ONE BOX ONLY)

○ 1 U.S. Government Plaintiff
○ 3 Federal Question (U.S. Government Not a Party)
● 2 U.S. Government Defendant
○ 4 Diversity (Indicate Citizenship of Parties in item III)

## III CITIZENSHIP OF PRINCIPAL PARTIES
(FOR PLAINTIFF AND ONE BOX FOR DEFENDANT) **FOR DIVERSITY CASES ONLY!**

|  | PTF | DFT |  | PTF | DFT |
|---|---|---|---|---|---|
| Citizen of this State | ○ 1 | ○ 1 | Incorporated or Principal Place of Business in This State | ○ 4 | ○ 4 |
| Citizen of Another State | ○ 2 | ○ 2 | Incorporated and Principal Place of Business in Another State | ○ 5 | ○ 5 |
| Citizen or Subject of a Foreign Country | ○ 3 | ○ 3 | Foreign Nation | ○ 6 | ○ 6 |

## IV. CASE ASSIGNMENT AND NATURE OF SUIT
(Place a X in one category, A-N, that best represents your cause of action and **one** in a corresponding Nature of Suit)

### ○ A. *Antitrust*
☐ 410 Antitrust

### ○ B. *Personal Injury/ Malpractice*
☐ 310 Airplane
☐ 315 Airplane Product Liability
☐ 320 Assault, Libel & Slander
☐ 330 Federal Employers Liability
☐ 340 Marine
☐ 345 Marine Product Liability
☐ 350 Motor Vehicle
☐ 355 Motor Vehicle Product Liability
☐ 360 Other Personal Injury
☐ 362 Medical Malpractice
☐ 365 Product Liability
☐ 368 Asbestos Product Liability

### ○ C. *Administrative Agency Review*
☐ 151 Medicare Act

**Social Security:**
☐ 861 HIA ((1395ff)
☐ 862 Black Lung (923)
☐ 863 DIWC/DIWW (405(g)
☐ 864 SSID Title XVI
☐ 865 RSI (405(g)
**Other Statutes**
☐ 891 Agricultural Acts
☐ 892 Economic Stabilization Act
☐ 893 Environmental Matters
☐ 894 Energy Allocation Act
☐ 890 Other Statutory Actions (If Administrative Agency is Involved)

### ○ D. *Temporary Restraining Order/Preliminary Injunction*
Any nature of suit from any category may be selected for this category of case assignment.

*(If Antitrust, then A governs)*

---

○ E. *General Civil (Other)*     OR     ○ F. *Pro Se General Civil*

**Real Property**
☐ 210 Land Condemnation
☐ 220 Foreclosure
☐ 230 Rent, Lease & Ejectment
☐ 240 Torts to Land
☐ 245 Tort Product Liability
☐ 290 All Other Real Property

**Personal Property**
☐ 370 Other Fraud
☐ 371 Truth in Lending
☐ 380 Other Personal Property Damage
☐ 385 Property Damage Product Liability

**Bankruptcy**
☐ 422 Appeal 28 USC 158
☐ 423 Withdrawal 28 USC 157

**Prisoner Petitions**
☐ 535 Death Penalty
☐ 540 Mandamus & Other
☐ 550 Civil Rights
☐ 555 Prison Condition

**Property Rights**
☐ 820 Copyrights
☐ 830 Patent
☐ 840 Trademark

**Federal Tax Suits**
☐ 870 Taxes (US plaintiff or defendant
☐ 871 IRS-Third Party 26 USC 7609

**Forfeiture/Penalty**
☐ 610 Agriculture
☐ 620 Other Food & Drug
☐ 625 Drug Related Seizure of Property 21 USC 881
☐ 630 Liquor Laws
☐ 640 RR & Truck
☐ 650 Airline Regs
☐ 660 Occupational Safety/Health
☐ 690 Other

**Other Statutes**
☐ 400 State Reapportionment
☐ 430 Banks & Banking
☐ 450 Commerce/ICC Rates/etc.
☐ 460 Deportation

☐ 470 Racketeer Influenced & Corrupt Organizations
☐ 480 Consumer Credit
☐ 490 Cable/Satellite TV
☐ 810 Selective Service
☐ 850 Securities/Commodities/ Exchange
☐ 875 Customer Challenge 12 USC 3410
☐ 900 Appeal of fee determination under equal access to Justice
☐ 950 Constitutionality of State Statutes
☐ 890 Other Statutory Actions (if not administrative agency review or Privacy Act

(3)

| ○ G. *Habeas Corpus/* 2255 | ⊗ H. *Employment Discrimination* | ○ I. *FOIA/PRIVACY ACT* | ○ J. *Student Loan* |
|---|---|---|---|
| ☐ 530 Habeas Corpus-General<br>☐ 510 Motion/Vacate Sentence | ☒ 442 Civil Rights-Employment (criteria: race, gender/sex, national origin, discrimination, disability age, religion, retaliation)<br>*(If pro se, select this deck)* | ☐ 895 Freedom of Information Act<br>☐ 890 Other Statutory Actions (if Privacy Act)<br>*(If pro se, select this deck)* | ☐ 152 Recovery of Defaulted Student Loans (excluding veterans) |

| ○ K. *Labor/ERISA (non-employment)* | ○ L. *Other Civil Rights (non-employment)* | ○ M. *Contract* | ○ N. *Three-Judge Court* |
|---|---|---|---|
| ☐ 710 Fair Labor Standards Act<br>☐ 720 Labor/Mgmt. Relations<br>☐ 730 Labor/Mgmt. Reporting & Disclosure Act<br>☐ 740 Labor Railway Act<br>☐ 790 Other Labor Litigation<br>☐ 791 Empl. Ret. Inc. Security Act | ☐ 441 Voting (if not Voting Rights Act)<br>☐ 443 Housing/Accommodations<br>☐ 444 Welfare<br>☐ 440 Other Civil Rights<br>☐ 445 American w/Disabilities-Employment<br>☐ 446 Americans w/Disabilities-Other | ☐ 110 Insurance<br>☐ 120 Marine<br>☐ 130 Miller Act<br>☐ 140 Negotiable Instrument<br>☐ 150 Recovery of Overpayment & Enforcement of Judgment<br>☐ 153 Recovery of Overpayment of Veteran's Benefits<br>☐ 160 Stockholder's Suits<br>☐ 190 Other Contracts<br>☐ 195 Contract Product Liability<br>☐ 196 Franchise | ☐ 441 Civil Rights-Voting (if Voting Rights Act) |

**V. ORIGIN**

☒ 1 Original Proceeding ○ 2 Removed from State Court ○ 3 Remanded from Appellate Court ○ 4 Reinstated or Reopened ○ 5 Transferred from another district (specify) ○ 6 Multi district Litigation ○ 7 Appeal to District Judge from Mag. Judge

**VI. CAUSE OF ACTION** (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE A BRIEF STATEMENT OF CAUSE.)
The Congressional Accountability Act, 2. U.S.C. 1301, 1302, et seq. (Incorporating Title VII of the Civil Rights Act 42 U.S.C. et seq.)   2000

**VII. REQUESTED IN COMPLAINT** ☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23   DEMAND $ $300,000.   Check YES only if demanded in complaint
JURY DEMAND:   YES ☒   NO ☐

**VIII. RELATED CASE(S) IF ANY**   (See instruction)   YES ☒   NO ☐   If yes, please complete related case form.

DATE May 21, 2007   SIGNATURE OF ATTORNEY OF RECORD _____ Pro Se

---

**INSTRUCTIONS FOR COMPLETING CIVIL COVER SHEET JS-44**
Authority for Civil Cover Sheet

The JS-44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. Listed below are tips for completing the civil cover sheet. These tips coincide with the Roman Numerals on the Cover Sheet.

I.   COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF/DEFENDANT (b) County of residence: Use 11001 to indicate plaintiff is resident of Washington, D.C; 88888 if plaintiff is resident of the United States but not of Washington, D.C., and 99999 if plaintiff is outside the United States.

III.   CITIZENSHIP OF PRINCIPAL PARTIES: This section is completed <u>only</u> if diversity of citizenship was selected as the Basis of Jurisdiction under Section II.

IV.   CASE ASSIGNMENT AND NATURE OF SUIT: The assignment of a judge to your case will depend on the category you select that best represents the <u>primary</u> cause of action found in your complaint. You may select only <u>one</u> category. You <u>must</u> also select <u>one</u> corresponding nature of suit found under the category of case.

VI.   CAUSE OF ACTION: Cite the US Civil Statute under which you are filing and write a brief statement of the primary cause.

VIII.   RELATED CASES, IF ANY: If you indicated that there is a related case, you must complete a related case form, which may be obtained from the Clerk's Office.

Because of the need for accurate and complete information, you should ensure the accuracy of the information provided prior to signing the form.

